**Thelma F. MEAD, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 80–7637.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1982.

Decided Sept. 14, 1982.

Marc D. Blackman, Ransom, Rogers & Blackman, Portland, Or., for petitioner.

Russell K. Kaplan, Washington, D. C., for respondent.

Before CHOY, TANG, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Mead seeks review of a Merit Systems Protection Board ("Board") decision rejecting her contention that a nationwide FBI reduction-in-force ("RIF") program was improperly implemented in regard to her at the FBI's Portland, Oregon office. We note jurisdiction under 5 U.S.C. § 7703, and affirm.

Mead commenced employment with the FBI in 1952, and served as chief clerk in the Portland office from 1965 to 1979. Her chief clerk position was graded GS–9. In

1979, pursuant to a nationwide restructuring of FBI field offices, the FBI abolished Mead's GS–9 position at its Portland office.

Some of the duties encompassed by Mead's former GS–9 position were transferred to a newly created GS–10 position of "office services manager". The new GS–10 position included greater managerial and supervisory responsibilities than the old GS–9 chief clerk position. After giving Mead a 135-day trial assignment in the new position, the FBI concluded that her performance was unsatisfactory and awarded the new GS–10 position to someone else. Mead was reassigned to a GS–4 position, but retained the same salary and fringe benefits she had in her GS–9 position.

Mead sought review with FBI headquarters of her demotion, and, after headquarters sustained her new rating, with the Board. Following an evidentiary hearing, the presiding officer concluded that the FBI had acted in furtherance of a *bona fide* RIF, and the full Board summarily affirmed. During the pendency of Mead's petition for review, this court granted the Government's motion for a remand so the Board could reconsider its decision in light of newly discovered evidence. The Board again affirmed Mead's demotion and filed an opinion explaining its decision.

■ The threshold issue in this case concerns the scope of the Board's jurisdiction to review FBI employment decisions. The Board has jurisdiction to review cases involving a violation by the employing agency of any law, rule or regulation. 5 U.S.C. § 7701(a). Although the Board generally has jurisdiction to review adverse employment actions taken by an agency, 5 U.S.C. §§ 7512, 7513, employees of an "excepted service" such as the FBI, 28 U.S.C. § 536, who are not preference eligibles (such as veterans) as defined in 5 U.S.C. § 7511(a)(1)(B), may not rely on Board review of most adverse actions. *See generally Carter v. United States*, 407 F.2d 1238,

1242 (D.C.Cir.1968). The Board lacks jurisdiction to consider allegations of improper personnel practices by excepted agencies like the FBI. 5 U.S.C. § 2302(a)(2)(C)(ii). *See Neely v. Central Intelligence Agency*, 2 MSPB 534, 535 (1980).

Under 5 C.F.R. § 351.901 (1982), however, an excepted service employee affected by a RIF can seek Board review to determine whether the RIF regulations have been properly applied. In reviewing RIF challenges, the Board has stated that it is not limited to determining solely whether the agency complied with the technical requirements of 5 C.F.R. §§ 351.201 et seq., but may also consider whether the RIF was improper because it was undertaken for reasons personal to the employee. *See Losure v. Interstate Commerce Commission*, 2 MSPB 361 (1980); *see also Sahni v. Government of the District of Columbia*, 4 MSPB 252 (1980); *Lewis v. Department of Army*, 4 MSPB 350 (1980). Each of these decisions involved situations where the RIF was allegedly improper because it was undertaken solely to eliminate or demote a specific employee.

■ The issue here, by contrast, is whether the Board has jurisdiction to review the effect of a RIF in an excepted service where the RIF was undertaken for a *bona fide* purpose, but its implementation was allegedly improperly handled as to the particular employee.[1] We conclude that the Board can go no further than reviewing the propriety of the RIF.

Among the permissible reasons set forth in 5 C.F.R. § 351.201(a) for a RIF is "reorganization." Reorganization, in turn, is defined as "the planned elimination, addition, or redistribution of functions or duties in an organization."

■ The Board found that the FBI instituted the RIF as part of a nationwide restructuring of its field offices. It also found that the reorganization required the

---

**1.** Mead has conceded throughout these proceedings that the Board lacked jurisdiction to review her demotion or the Bureau's decision not to appoint her to the new GS–10 position.

In an attempt to circumvent this jurisdictional obstacle, she has framed her arguments to focus on whether the FBI's actions constituted an improper RIF because it was personal to her.

creation of the GS–10 office services manager position; that the new position had substantially different responsibilities from the GS–9 position formerly occupied by Mead; that Mead was not entitled to the new position as a matter of right; and that the newly discovered FBI documents failed to demonstrate that the reorganization was implemented in the Portland office solely to camouflage Mead's demotion or to allow her supervisor to place his personal secretary in the new position. Based on these findings, the Board concluded that the RIF was *bona fide* and not undertaken solely to demote Mead. We affirm the Board's determination because it is not arbitrary, capricious or an abuse of discretion, it is supported by substantial evidence, and was reached in accordance with law and proper procedures. *See* 5 U.S.C. § 7703(c). To the extent that Mead's claims go beyond challenging the *bona fide* nature of the RIF, we conclude that the Board lacked jurisdiction to review them. Because Congress clearly rejected the attempt to extend to employees of excepted services such as the FBI the protections afforded most civil service workers, the Board's jurisdiction cannot be stretched to reach Mead's non-RIF related allegations.[2]

Mead's petition for review is DENIED.

---

2. In reaching this conclusion, we note the availability of three separate, albeit sometimes quite limited, avenues of relief available to Bureau employees. First, Bureau employees may be able to challenge the agency's employment actions on constitutional grounds in certain situations. *See Ashton v. Civiletti*, 613 F.2d 923 (D.C.Cir.1979) (holding that FBI employee possessed a property interest in the continued retention of his position). We are not faced with such a contention. Second, although the parties have not brought them to our attention, the Bureau may have internal procedures for handling employment disputes. *See* 5 U.S.C. § 301 (authorizing the Attorney General to prescribe regulations for the governance of his department and 28 C.F.R. § 0.137 (1981) (delegating the Attorney General's authority to the Bureau's Director "to take final action in matters pertaining to the employment, direction and general administration ... of personnel").

Finally, Congress has provided FBI employees with protection from retaliation against "whistleblowing." *See* 5 U.S.C. § 2303(b) (requiring Attorney General to prescribe regulations to ensure that FBI employees are not subject to personnel action as a reprisal for disclosing information regarding the Bureau to the Attorney General). The Attorney General created the Office of Professional Responsibility (OPR) to effectuate the statute. 28 C.F.R. §§ 0.39 et seq. (1981). The OPR denied Mead's request for relief on the ground that her allegations failed to establish that the Bureau's actions were the result of any whistleblowing by Mead.